IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ALLISON BLANCHARD,           )
      Plaintiff,                )
                                )
      v.                        )           Civil No. 1:21-cv-0649
                                )
ARLINGTON COUNTY, VIRGINIA,   )
      Defendant.                )

## MEMORANDUM OPINION

Plaintiff Allison Blanchard filed this action against her former employer, Arlington County, Virginia (the "County") alleging (i) sex discrimination, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"); (ii) disability discrimination, pursuant to the Americans with Disabilities Act ("ADA"); (iii) age discrimination, pursuant to the Age Discrimination in Employment Act ("ADEA"); and (iv) retaliation under each act as well as retaliation under the Family Medical Leave Act ("FMLA"). At the threshold stage, pursuant to Rule 12(b)(6), Fed. R. Civ. P., the County's motion to dismiss was granted in part and denied in part. *See* Order, dated February 15, 2022 (Dkt. 21). Specifically, the motion was granted with respect to plaintiff's claims of a pregnancy-related hostile work environment, a disability-related hostile work environment, and age-based discrimination. The parties thus proceeded to discovery on plaintiff's five remaining claims that she was terminated due to: (i) Count I – pregnancy discrimination; (ii) Count III – retaliation pursuant to Title VII; (iii) Count IV – disability discrimination; (iv) Count VI – retaliation pursuant to the ADA; and (v) FMLA retaliation.

At issue now is defendant's motion for summary judgment, in which defendant argues that summary judgment should issue because plaintiff cannot establish a causal nexus between her termination and any alleged discrimination or protected characteristic. Plaintiff opposes the

1

motion for summary judgment, arguing that there are material facts in dispute and that the undisputed facts create a reasonable inference of discrimination.

The motion has been fully briefed and oral argument was held on August 26, 2022. The matter is thus ripe for disposition. For the reasons stated below, defendant's motion must be granted, and judgment must enter in favor of defendant.

## I.

Summary judgment is appropriate only where there are no genuine disputes of material fact. *See* Rule 56, Fed. R. Civ. P. To this end, defendant, in compliance with Rule 56 and Local Rule 56, set forth a statement of material facts in separate enumerated paragraphs that defendant contends are undisputed and supported by record citations. The Rules next required plaintiff to respond to defendant's statement of undisputed fact by "listing all material facts to which it is contended that there exists a genuine dispute" with citations to the record. L.R. 56(B). Plaintiff complied with this portion of the Rule and contested only ***nine*** of defendant's thirty-eight asserted undisputed facts. Accordingly, except for the nine facts identified by plaintiff in her response brief as disputed, the remaining undisputed facts asserted by defendant are deemed admitted pursuant to the Rules. *See id.* Plaintiff did not fully comply with the Rules, however, because plaintiff also set forth a narrative "Summary of Relevant Facts." Opp'n Br. at 2. Neither the Rules nor case authority permit this. *See Sadeghi v. Inova Health Sys.*, 251 F. Supp. 3d 978, 981 (E.D. Va. 2017). By setting forth an alternative, narrative statement of the facts, plaintiff has made it difficult for defendant to respond to plaintiff's alternative facts and plaintiff has made it "difficult to determine exactly which material facts are disputed." *Id.* (citing *Integrated Direct Marketing, LLC v. May*, 129 F. Supp. 3d 336, 345 (E.D. Va. 2015)).

Accordingly, the following statement of facts is derived from a careful review of (i)

2

defendant's statement of undisputed facts, most of which are uncontested and admitted by plaintiff;

(ii) plaintiff's response which contests only nine alleged undisputed facts;[1] and (iii) the summary

judgment record as a whole.  Given this, the undisputed facts are as follows:

1.  Plaintiff is a woman and has two children, one born in 2015 and one born in 2019.

    a.  To conceive her children, plaintiff relied on in vitro fertilization ("IVF").  The process involved at least seven different IVF cycles and plaintiff miscarried on several occasions.

2.  In June 2012, plaintiff was hired by the County as a limited-term Facility Project Programmer or Facilities Project Specialist in the Department of Environmental Services ("DES"), Facilities and Engineering Service Area, Director's Office.

    a.  A limited-term employee is a position with a limited duration specific to a task assigned to the person hired.[2]

3.  George May, at all relevant times, was the Deputy Director of the County's Facilities and Design and Construction ("FDC") group.  The FDC performs facility design and construction.

4.  June Locker, at all relevant times, was the Bureau Chief for FDC.

5.  Michelle Congdon was first hired by the County in May 2003 as a limited-term employee in an interior position.  Thereafter, she was hired for a permanent position.  After a promotion to Interior Design Supervisor, Congdon became the Planning Manager in 2011.

6.  When plaintiff applied to work for the County, plaintiff was interviewed by a panel consisting of: (i) Ron Peele; (ii) Karin Talley; (iii) Congdon; and (iv) May.  The panel made a recommendation to Greg Emanuel, Deputy Director for Facilities and Engineering, that plaintiff be hired, and plaintiff later interviewed directly with Emanuel.

7.  At the time plaintiff was hired, plaintiff reported directly to Emanuel.

8.  The offer of employment expressly provided: "The expected duration of this limited-term assignment is up to two years.  Since you are in a limited-term position, you will not serve a probationary period and you do not have permanent status."

---

[1] Each of those contested facts has been examined to determine whether the record citations supplied by the parties support their positions, whether defendant's asserted undisputed facts should be modified in any way, and whether there is a genuine dispute of material fact.

[2] Plaintiff concedes that she was hired as a limited-term employee. *See* Opp'n Br. at 14; Blanchard Depo. Tr. at 72:20-739 (testifying that she was hired as a limited-term employee and that her position never became something other than a limited-term position).

a. Prior to 2020, if a limited term employee was continued beyond the time specified in the offer of employment letter, as occurred here, the employee did not receive any formal notice of continuation of employment.

9. During plaintiff's employment by the County, her position never changed from a limited-term position to a permanent position.

10. Shortly after plaintiff began working for the County, plaintiff's supervisor changed from Emanuel to Peele. Peele remained plaintiff's supervisor until 2015 when he left County employment.

11. Upon Peele's departure, Locker became plaintiff's supervisor.

12. On December 9, 2015, plaintiff took FMLA-based maternity leave. Plaintiff was on FMLA leave from December 9, 2015 to March 2016.

13. During plaintiff's first maternity leave, Congdon replaced Locker as plaintiff's supervisor.

a. At the time, Congdon was the Planning Manager and reported to Locker.

b. Plaintiff was Congdon's only direct report.

14. As plaintiff's supervisor, Congdon was responsible for approving plaintiff's timecards and it was necessary for Congdon to track when plaintiff was in the office.

15. In August 2018, plaintiff notified Congdon that plaintiff was 12 weeks pregnant.

16. Although the record reflects that Congdon never denied plaintiff leave for plaintiff to attend pregnancy-related appointments, in 2017, Congdon did deny one of plaintiff's requests for leave for a *fertility*-related appointment. Congdon also occasionally asked plaintiff to change the times of her pregnancy-related appointments.[3]

17. In September 2018, Congdon assigned plaintiff as a project manager for the Arlington County Government Trades Center ("Trades Center").

a. The Trades Center project consisted of walking the Trades Center campus with consultants. This was to allow the consultants to assess what updates would need

---

[3] Plaintiff disputes that Congdon never denied plaintiff leave for plaintiff to attend pregnancy-related appointments. *See* Opp'n Br. at 16. Yet, plaintiff's deposition testimony does not support her position. Plaintiff testified that at the time of her second pregnancy her paid leave was depleted, and that Congdon would sometimes ask plaintiff to change her pregnancy-related appointments. Blanchard Depo. Tr. at 126:21; *id.* at 128:2-5. Additionally, when asked during her deposition, plaintiff stated that she could not recall that she was ever denied leave for a pregnancy-related appointment, and then later identified an appointment in April but she then conceded that leave for even that pregnancy-related appointment was ultimately approved. *See id.* at 129:17-132:9. The only date that plaintiff specifically points to as being denied leave is for a fertility-related appointment in 2017. *See id.* at 144:13-145:9. Because the portion of the record cited by plaintiff does not support her argument, defendant's alleged undisputed fact that Congdon did not deny plaintiff leave for pregnancy-related appointments is appropriately undisputed on this record.

to be made to facilities so that the County could update its master plan and budget appropriately.

   b. Plaintiff's role was to walk the consultants around the site and to provide access to the building.

18. At the time of her assignment, plaintiff had no medical restrictions that prevented her from serving as a project manager for the Trades Center project.

19. Plaintiff was concerned about the Trades Center project, however, because much of the work would fall within the last trimester of her pregnancy.

20. In December 2018, plaintiff obtained a note from her doctor which limited plaintiff to sedentary work for half of her workday but allowed plaintiff to walk for the other four hours of her workday. The doctor's note did not preclude plaintiff from working at the Trades Center, nor did it prevent plaintiff from engaging in four hours of continuous walking.

21. Plaintiff requested an accommodation based on her doctor's note. Although the County granted plaintiff's accommodation request,[4] plaintiff remained uncomfortable with the work assignment. Plaintiff went to Locker and Congdon to express her concerns.

22. Congdon and Locker requested that plaintiff send written documentation of plaintiff's concerns. Plaintiff did so.

23. According to plaintiff, Congdon and Locker did not believe plaintiff's concerns were valid.

24. Plaintiff then reached out to Justin Corwin, an Occupational Safety and Health Administration specialist with the County, on December 10, 2018. Plaintiff stated that she wanted to consult about the Trades Center project and whether "the chemicals at that location cause me [sic] any threat to me or my unborn child?" Def. Exh. 5.

25. Corwin responded: "There are no dangers to unborn children present from walking around any of the DES sites at trades that I'm aware of. . . ." He further noted: "Just walking around your primary route of entry would be inhalation. . . The shop is fairly well ventilated and would be less exposure than sitting on 395 stop traffic (as an example)." Corwin stated that plaintiff was entitled to look at the safety data on any specific chemicals,

---

[4] Plaintiff did not dispute defendant's asserted undisputed fact as required by Rule 56 and Local Rule 56, thus the fact asserted by defendant are undisputed. A thorough review of plaintiff's "alternative" facts suggests that plaintiff believes that Congdon violated the requested accommodation and required plaintiff to be on her feet for six hours. *See* Opp'n Br. at 11. The deposition testimony does not support plaintiff's argument in her "alternative" facts. Plaintiff testified that plaintiff was in the field for six hours walking for two days but did not testify that either Congdon or Locker required that of plaintiff. *See* Blanchard Depo. Tr. at 174:8-10. Congdon's deposition testimony makes clear that Congdon instructed plaintiff to make sure that plaintiff's site visits were no more than three hours. *See* Congdon Depo. Tr. at 69:13-70:17. There is no conflict between this deposition testimony. Although it appears that plaintiff did spend more than four hours walking, the record does not reflect that anyone employed by defendant directed plaintiff to do so in violation of her reasonable accommodation and plaintiff has not cited to any record evidence to the contrary supporting that argument.

but that this information should "give[] you some peace of mind." *Id.*

26. Plaintiff remained concerned that the Trades Center project, and in particular site visit to the Fire Academy Tower, presented a danger to her pregnancy, but plaintiff did not seek further restrictions from her doctor. Plaintiff did reiterate her concerns, however, to Locker and Congdon.

27. To accommodate plaintiff's concerns regarding her pregnancy, Congdon took over some of plaintiff's duties at the Trades Center and also assigned some of the duties to another employee.[5] Plaintiff was still required to perform a site visit at the Fire Academy Tower.

28. On December 10, 2018, plaintiff raised concerns regarding pregnancy discrimination with Locker after plaintiff asserted that she spent two days spending six hours each day conducting tours at Trades Center.

29. Following that conversation, plaintiff requested sedentary duty and then, subsequently, fulltime telework. Those requests for accommodation were both granted.

    a. Plaintiff believes that one of her accommodation requests was delayed unreasonably because Congdon was out of the office on leave.[6]

    b. Although Condgon sometimes checked her emails while on leave, Congdon testified at deposition that she did not see plaintiff's request for an accommodation and that the request was granted before Congdon returned from leave.[7]

    c. The emails between plaintiff and Anthonia Sowho, the Disabilities Resources and

---

[5] Plaintiff unsuccessfully attempts to dispute that Congdon took over some of plaintiff's duties at the Trades Center to accommodate plaintiff, but the portions of her deposition testimony on which she relies do not create a genuine dispute of material fact. Plaintiff testified at deposition that Congdon took two areas about which plaintiff had concern – the Water Sewer Streets and the Earth Products Yard – and that those areas were further delegated to another employee. Plaintiff thus attempts to characterize that employee as taking over Congdon's duties rather than plaintiff's duties. But this is incorrect. The deposition testimony reflecting this is not at odds with defendant's asserted undisputed fact that *some* of plaintiff's duties were reassigned. Plaintiff also asserts that she was still required to perform a site visit at the Fire Academy Tower. Defendant's asserted undisputed fact has been modified to reflect that plaintiff was required to perform the site visit at the Fire Academy Tower. Accordingly, there is no genuine dispute of material fact as the record plainly reflects that some of plaintiff's pregnancy-related concerns were accommodated either by reassigning duties to Congdon or by Congdon delegating those duties to another employee.

[6] The record and the deposition testimony are unclear as to which accommodation was made while Congdon was on leave. Plaintiff's deposition testimony and Congdon's deposition testimony appear to refer to plaintiff's request for sedentary work being made while Congdon was out of the office, *see* Blanchard Depo. Tr. at 177; Congdon Depo. Tr. at 72-75 , but emails between plaintiff and another employee, which were referenced in that same deposition testimony, suggest that it was plaintiff's telework accommodation request that was at issue, *see* Def. Exh. 6 (emails between plaintiff and other defendant employees Bates-marked 342-343). In any event, it is immaterial which accommodation request plaintiff believes was delayed by Congdon's leave.

[7] Plaintiff unsuccessfully attempts to dispute defendant's asserted undisputed fact that Congdon did not see plaintiff's request for an accommodation, by asserting that Congdon responded to other work-related emails while Congdon was on vacation. Defendant's asserted undisputed facts have been modified to include the evidence in the record: (i) that Congdon testified that she did not see plaintiff's accommodation request while Congdon was on vacation; and (ii) that Congdon responded to other work emails while she was on vacation.

ADA Coordinator for defendant, reflect that plaintiff's accommodation was approved on January 17, 2019. In the email approving plaintiff's accommodation, Sowho referenced that, when Congdon returned to the office, an official memorandum regarding plaintiff's accommodation would issue.

d. Plaintiff took unpaid leave on January 17-18, 2019 because, although her accommodation had been approved, she had not received an official memorandum formally approving the request. In an email on January 18, 2019, plaintiff sought further clarification on her accommodation.

e. On January 18, 2019, Anna Maynard, the EEO Investigator of defendant, responded to plaintiff's January 18, 2019 email. Maynard reiterated that defendant had approved plaintiff's requested accommodation and clarified that "the official memorandum [wa]s not necessary for the accommodation to begin." Def. Exh. 6.

30. On December 19, 2018, around the same time as plaintiff made her accommodation request for telework, plaintiff filed an Internal EEO Complaint asserting that Locker and Congdon engaged in disability and pregnancy discrimination and retaliation against plaintiff. *See* Def. Exh. 7.

a. In the Internal EEO Complaint, plaintiff asserts that Locker and Congdon retaliated against plaintiff, including: "micromanagement; withholding project information; communication issues and lack of [sic]; unclear direction; setting me up for failure with absent knowledge; toxic environment; as of December 19, 2018 – [sic] neither June nor Michelle acknowledge or communicate with me."[8]

31. On January 3, 2019, before going out on maternity leave, plaintiff was given a mid-year review by Congdon. Plaintiff disputed the accuracy of her review and refused to sign it.

32. As a result of the mid-year review, plaintiff's job did not change, her job title did not change, and her pay was not reduced.

33. On January 17, 2019, plaintiff wrote Maynard to assert that she was being harassed by Congdon. Plaintiff asserted that:

a. Congdon "is on vacation this week and called Orayb (our Administrative Assistant) at 1030 [sic] to see if I was in the office yet because I am not showing up on Skype" and that Congdon "logs in while on vacation to watch over me." Def. Exh. 9.

b. Other instances of harassment alleged by plaintiff included: (i) Congdon's decision to personally take over some of plaintiff's tasks while plaintiff was on maternity leave; (ii) requesting that plaintiff reschedule training on Sharepoint for when

---

[8] Defendant attempts to assert additional facts with respect to plaintiff's complaints in paragraph 18 of defendant's asserted undisputed facts. Some of the facts that defendant attempts to assert, however, are legal arguments not appropriate for defendant's undisputed statement of facts. *See* Mem. Supp. of SJ at ¶ 18, p. 7 (Dkt. 35).

plaintiff had returned from maternity leave so that plaintiff would be present to handle the logistics; and (iii) asking staff about plaintiff's whereabouts when plaintiff was away from her desk for prolonged periods (15 mins).

34. Plaintiff was on FMLA maternity leave from January 30, 2019 through April 23, 2019. Plaintiff took this leave without any interference from defendant or its employees.

35. Upon plaintiff's return to work from maternity leave, all of the projects that plaintiff had handled previously were returned to her, including a Courts/Police Study project. The Courts/Police Study project took up most of plaintiff's time but was less than part time and was completed in December 2019.

36. Plaintiff also took back the Trades Center project upon her return to work, but that project was "on pause" for "political reasons" related to civic engagement. No work was performed on the Trades Center project in 2020.

    a. Once the Trades Center project resumed, after plaintiff was discharged, the only task remaining was database maintenance and Congdon performed that task.

37. The Facilities Condition Assessments, for which plaintiff was also responsible, was also wrapping up upon plaintiff's return from leave in spring 2019, except for ongoing quarterly updates to the database.[9]

38. The only other project to which plaintiff was assigned at the time plaintiff returned from maternity leave was her work as technology coordinator, which included laptop refreshes and software updates. This task took no more than ten (10) hours a week, and sometimes only took one (1) hour a week.

39. In April 2019, after returning from maternity leave, plaintiff was reviewing the calendars of May, Congdon, and Locker, among others. In her review, plaintiff noticed a calendar entry for May dated February 21, 2019, which stated, "Process discussion ending a limited-term assignment." Plaintiff assumed that May's calendar entry was about plaintiff.[10]

---

[9] Plaintiff disputes that the Facilities Condition Assessments project was wrapping up. Plaintiff cites her deposition testimony in which plaintiff disputed that the project was 95 percent complete. *See* Blanchard Depo. Tr. at 217:8-22. But in that deposition testimony plaintiff only identifies quarterly updates to the database as ongoing work required on the project. *See id.* Congdon's deposition testimony, as cited by defendant, indicates that those quarterly updates would be "very, very minor." Congdon Depo. Tr. at 107:3-9. Defendant's asserted undisputed fact has been modified to include the information raised by plaintiff, that there was ongoing database management, but the deposition testimony cited by plaintiff does not create a genuine issue of material fact as to whether the project was wrapping up at the time plaintiff returned from maternity leave.

[10] Plaintiff disputes that she "assumed" that the entry was about her. Plaintiff states that May's administrative assistant, Orayb Abed, told plaintiff that she should start looking for a new job because May, Congdon, and Locker had a meeting about eliminating plaintiff's position. In support of this assertion, plaintiff relies only on her own deposition testimony recounting what May's administrative assistant said to plaintiff about that meeting – which plaintiff says Abed did not attend. Plaintiff's recitation of what Abed told her is inadmissible hearsay and cannot create be relied upon at summary judgment. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (summary judgment record evidence cannot be based upon hearsay); *Maryland Highways Contractors Ass'n,*

40. On June 24, 2019, plaintiff received her annual performance evaluation.

    a. The County evaluates its employees on a 5-point scale, and a "3" reflects "meets expectations." Plaintiff's numerical rating was a 3.4.

    b. Plaintiff did not believe that her evaluation was correct and believed that the rating was "part of the design to eliminate [her] position." Blanchard Depo. Tr. at 218:1-25.

    c. At this time, plaintiff did not believe that anything that Congdon or Locker did was positive or meant to assist plaintiff.

41. Every December, Locker receives a notification from HR with a list of her limited-term employees. In December 2019, Locker received such a list, which included plaintiff. Locker was then required to investigate the workload of each limited term employee and to justify their continued employment and make recommendations to HR and to the Deputy Director.

42. On March 5, 2020, plaintiff was advised that her job was being eliminated because the projects that required her skill set had come to an end.

    a. Specifically, the memorandum stated: "Your recent assignments have included oversight of consultant services for the Facilities Condition Assessment (FCA), Courts-Police Renovation Study, and Trades Center Optimization Study (TCOS), all of which are nearly complete. Currently there is insufficient work to utilize your skills beyond that point." Def. Exh. 11.

43. Once plaintiff was laid off, her position was eliminated. Congdon wrapped up some of the remaining work on plaintiff's projects and plaintiff's technology role was performed by another employee, Angela Toler. Within the next two years, all limited-term positions within plaintiff's department were eliminated. [11]

44. Plaintiff was notified of her lay-off by Emanuel, the Deputy Director for Facilities and Engineering. Plaintiff agrees that Emanuel never discriminated or retaliated against

---

*Inc. v. State of Md.*, 933 F.2d 1246, 1251 (4th Cir. 1991) (holding that "hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment"). Furthermore, in her deposition, plaintiff testified that she assumed that the calendar entry was about plaintiff. *See* Blanchard Depo. Tr. at 57:6-10. Accordingly, plaintiff has not created a genuine issue of material fact regarding whether plaintiff assumed that the February 21, 2019 calendar entry was about plaintiff.

[11] Plaintiff disputes that her position was eliminated and, in support, cites to Congdon's deposition testimony regarding which tasks performed by plaintiff were taken over by Congdon or other employees. Although the testimony cited by plaintiff does not refute defendant's asserted undisputed fact that plaintiff's position was eliminated, defendant's asserted undisputed fact has been modified to reflect Congdon's testimony regarding who completed the remaining tasks on plaintiff's projects and Locker's testimony that all limited-term positions within the department were eliminated. Accordingly, there is no genuine issue of material fact with respect to the asserted fact that plaintiff's limited-term position was eliminated.

plaintiff.

45. The decision regarding whether a limited-term employee's employment continues is generally made by the Deputy Director, here May, on the recommendation of the Bureau Chief, here Locker. Before Locker makes recommendations to May regarding whether to continue to employ limited-term employees, Locker meets with her direct reports, program managers, and interior design group leads to review workloads. With respect to plaintiff, Locker consulted with Congdon regarding project workloads, but Congdon was not a decision-maker with respect to whether to terminate plaintiff.[12]

46. In 2020, in addition to plaintiff, Locker recommended terminating two additional limited-term employees due to lack of work and budgetary constraints.

    a. Both of those employees were men.

    b. Both of those employees' limited term positions were eliminated.

    c. One opted to retire in lieu of being laid off. The other located, applied for, and was hired to fill another position with the County.

47. FDC no longer utilizes any limited-term employees.

48. Congdon did not have input into or control over whether there would be funds to cover plaintiff's position in the County budget. Congdon also did not have any involvement in the decision to lay-off plaintiff. Congdon's involvement was limited to providing information on workload, which was a normal conversation she would have as part of her work duties.[13]

49. After plaintiff's position was eliminated, Congdon preceded to handle the following tasks

---

[12] Plaintiff attempts to dispute defendant's asserted facts regarding whether Congdon was involved in the decision to terminate plaintiff. Plaintiff correctly notes that defendant's interrogatory responses include Congdon as a person who was involved in the decision to lay off plaintiff, but those interrogatory responses do not suggest that Congdon was a decision-maker. *See* Pl. Exh. I (Dkt. 41-9). Congdon's and Locker's deposition testimony also reflects that Locker consulted with Congdon regarding plaintiff's project workload. Plaintiff also relies on her own deposition testimony regarding what Abed told her. As discussed, *supra* at footnote 10, that testimony relies on inadmissible hearsay and cannot create a genuine issue of material fact and so is not considered here. Accordingly, defendant's asserted undisputed fact has been modified to include that Locker consulted Congdon regarding project workloads, but that Congdon was not the decision-maker with respect to the decision to terminate plaintiff.

[13] Plaintiff unsuccessfully attempts to dispute the facts asserted in this paragraph. It is not clear whether plaintiff disputes the entirety of the paragraph or whether she only disputes part of the paragraph as plaintiff only states: "Disputed." Because plaintiff failed to cite any portion of the summary judgment record to support that there is a genuine issue of material fact, plaintiff has failed to meet her burden under Rule 56. *See* Rule 56(c)(1), Fed. R. Civ. P. The failure to cite to record evidence means that no genuine dispute has been raised. *See Hadeed v. Abhraham*, 265 F.Supp.2d 614, 620 n. 19 (E.D. Va. 2003); *Taylor v. CNA Corp.*, 782 F.Supp.2d 182, n. 1(E.D. Va. 2010) ("Where defendant identified facts in the record to support their motion for summary judgment, and Taylor failed to cite evidence in the record to dispute those facts, the facts defendants identified are taken as true."). Moreover, the deposition testimony of Locker and Congdon clearly supports defendant's asserted undisputed facts. *See* Locker Depo. Tr. at 27:12-30:11; Congdon Depo. Tr. at 120-21, 126-28, 144, 147.

which were previously completed by plaintiff:

    a.  Congdon finished the Facility Conditions Assessments and handled database management.  These tasks required little time.

    b.  Congdon also handled annual budget formation tasks for the Capital Improvement Program.

50. Angela Toler, another County employee, assumed plaintiff's technical coordinator duties. Toler spends only minimal time on those tasks.

51. In addition to managing these few remaining tasks previously completed by plaintiff, Congdon has now been moved to the position of FDC Acting Bureau Chief and Programs Facilities Manager.

52. Following the elimination of plaintiff's position, the County did not approve, advertise, or fund any position to replace plaintiff.  Defendant has not reinstated plaintiff's former position  and no person has been hired to fill any part of the role that plaintiff previously filled.

53. Although the County considered creating a full-time Facilities Planner/Architect position, that position was never approved or funded.  Even if that position had been created or funded, plaintiff would not have been qualified for such position.[14]

## II.

The standard for summary judgment is too well-settled to require extensive elaboration here. Summary judgment is appropriate when there is "no genuine dispute as to any material fact" and based on those undisputed facts the moving party "is entitled to judgment as a matter of law." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). To serve as a bar to summary judgment, disputed of fact must be "material," which means that they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Importantly, at the summary judgment stage, courts must "view the evidence in the light most favorable to . . . the non-movant." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

---

[14] In paragraph 83 of her Complaint, plaintiff alleges that a Facilities Planner/Architect position was created to replace plaintiff.  In her deposition, plaintiff acknowledge that the position was eliminated from the final budget.  *See* Blanchard Depo. Tr. at 240.

## III.

To avoid summary judgment on her Title VII discrimination and retaliation claims, plaintiff may either produce direct evidence of discrimination or retaliation or rely instead on the *McDonnell-Douglas*[15] burden shifting framework. Direct evidence is "evidence of conduct or statements that both reflect directly on the alleged discriminatory attitude and that bear directly on the contested employment decision." *Johnson v. Mechs. & Farmers Bank*, 309 F. App'x. 675, 681 (4th Cir. 2009) (quoting *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (*en banc*)). Here, plaintiff has not produced direct evidence of retaliation and does not claim that she has such evidence. Accordingly, it is necessary to analyze plaintiff's claims under *McDonnell-Douglas'* burden-shifting framework.

### A. Pregnancy Discrimination

Plaintiff claims that her 2020 termination was due to pregnancy discrimination based almost entirely on the interactions between herself and Congdon from the period of 2017 to 2019. *See* Opp'n Br. at 21 (collecting testimony from plaintiff's deposition regarding her interactions with Congdon).[16] To make out a *prima facie* case of pregnancy discrimination, a plaintiff must provide evidence that demonstrates that her termination occurred under circumstances giving rise to a plausible inference of discrimination. *See Evans v. Technologies Applications & Serv. Co.*,

---

[15] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (establishing a framework for discrimination cases whereby: (1) the plaintiff establishes a *prima facie* case, then (2) the defendant must offer a legitimate, nondiscriminatory reason for the action taken, and then (3) the plaintiff must show that the offered explanation is pretextual).

[16] As defendant noted in its Reply, these facts are disputed. *See* Reply at 1 n.2. These disputes will be resolved in favor of plaintiff as the nonmovant – that is, for purposes of summary judgment it will be assumed that plaintiff's recitation of her interactions with Congdon is correct. *See Bonds v. Leavitt*, 629 F.3d 368, 380 (4th Cir. 2011) (in reviewing summary judgment a district court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party). Ultimately, these disputes are not material because Congdon was not the decisionmaker with respect to plaintiff's layoff and because they do not establish that the asserted legitimate nondiscriminatory reason for that layoff was pretextual.

80 F.3d 954, 960 (4th Cir. 1996). Even generously construing plaintiff's interactions with Congdon in the light most favorable to plaintiff, plaintiff has failed to establish that her termination occurred under circumstances giving rise to a plausible inference of discrimination.

Plaintiff cites six interactions as support for her *prima facie* case of discrimination. *See* Opp'n Br. at 21-22. As plaintiff concedes, all of these interactions are well beyond the 300-day lookback period and well before plaintiff's termination on March 5, 2020. Some of the allegations relied upon by plaintiff are unsupported by the record. For example, plaintiff asserts that Congdon frequently denied plaintiff's leave requests. But, as discussed *supra* at footnote 3, the record reflects Congdon never denied plaintiff leave to attend pregnancy-related appointments. Other examples cited by plaintiff are not indicative of bias in these circumstances. It was not unreasonable for Congdon or defendant to ask plaintiff to reschedule a doctor's appointment.[17] Similarly, it was reasonable and not discriminatory for Congdon, as plaintiff's supervisor, to remind plaintiff of defendant's sick leave policies or to remind plaintiff to be cautious about her leave usage. A closer question regarding evidence of Congdon's alleged bias is presented by plaintiff's January and June 2019 performance reviews, which made references to plaintiff's maternity- and pregnancy-related leave, and statements that plaintiff was leaving her team in a bind. *See* Opp'n Br. at 21-22. Although plaintiff's argument in support of her *prima facie* case at summary judgment is significantly weaker than it appeared at the motion to dismiss stage,[18] it is

---

[17] *See Sandoval v. Las Clinicas Del Norte, Inc.*, 2006 WL 8444213, at *6 (D.N.M. May 22, 2006) (holding that it was "in no way unreasonable to as her to alter a scheduled date"); *Chauncy v. Life Cycle Eng'g, Inc.*, 2013 WL 5468237, at *10 (D.S.C. 2013) (holding that plaintiff failed to demonstrate a *prima facie* case of discrimination based on the employer refusing to let her reschedule a meeting scheduled at the same time as a doctor's appointment).

[18] At the motion to dismiss stage, plaintiff's argument in this regard was substantially stronger, as plaintiff had alleged that, during plaintiff's maternity leave, plaintiff's supervisors were engaged in meetings to terminate her. But the evidence on summary judgment does not support plaintiff's allegations. As discussed *supra* at footnote 10 on pages 8-9, the only evidence plaintiff cites regarding the substance of a February 2019 meeting between Congdon, Locker, and May is inadmissible hearsay testimony. Thus, this case is not like the Fourth Circuit's decision in *Miles v. Dell, Inc.*, 429 F.3d 480 (4th Cir. 2005), where the Fourth Circuit held that, despite a yearlong time lapse between the

appropriate to assume without deciding that plaintiff has established a *prima facie* case.

Pursuant to the *McDonnell-Douglas* framework, once a plaintiff established a *prima facie* case of discrimination, the defendant must proffer a legitimate, nondiscriminatory reason for the employment action. Here, as a legitimate, nondiscriminatory reason for plaintiff's termination, defendant proffers that there was not enough work to justify plaintiff's continued employment as a limited-term employee. Thus, the burden then shifts to plaintiff to show pretext, namely that defendant's explanation "is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [illegal] discrimination." *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004). Plaintiff has failed to do so.

Plaintiff offers two arguments that defendant's proffered legitimate, nondiscriminatory reason is pretextual: (i) there were projects to which plaintiff could have been assigned; and (ii) plaintiff was not assigned any new projects upon her return from maternity leave. *See* Opp'n Br. at 30. These arguments are unpersuasive. The testimony plaintiff cites does not support that there was sufficient work for plaintiff to perform. Plaintiff cites her own deposition testimony that there were three projects that could have been assigned to her: a space planning project, a Joint Facility Advisory Committee project, and a detention facility space planning refresh. *See id.* Those projects were handled by Congdon. *See* Blanchard Depo. Tr. at 211:16-212:6.

But that those projects existed, and that Congdon was able to handle them without plaintiff's assistance does not create a reasonable inference that defendant's explanation was pretextual or that there was enough work for *both* Congdon and plaintiff to perform. Indeed, courts

---

plaintiff's pregnancy and her termination, the plaintiff had established a *prima facie* case of discrimination because there was evidence that the decisionmaker "was rebuffed in his first attempt [to fire the plaintiff] and simply bided his time until he could convince management to fire her." *Id.* at 491. Here, there is no evidence that Congdon ever sought to terminate plaintiff during her maternity leave or at any time prior to Emmanuel's decision to lay off plaintiff, on the basis of Locker's recommendation.

have recognized that an inference of discrimination does not arise where a terminated employee's job duties are redistributed among existing coworkers.[19] Plaintiff also relies on the existence of "pop up projects" as providing work for plaintiff to perform, but plaintiff does not establish that any such "pop-up projects" existed at the time of her termination, that she would have been qualified to perform any of those projects, or that those projects would have taken sufficient time to justify her continued employment. *See* Opp'n Br. at 30.  Thus, plaintiff's reliance on "pop-up projects" is pure speculation.  Indeed, plaintiff's deposition testimony reflects that plaintiff was not aware of any specific pop up projects, as she testified: "Just other pop-up projects that I can't recall." Blanchard Depo. Tr. at 212:7-9.  Such speculative, self-serving testimony is not sufficient to provide a basis for a reasonable juror to determine that defendant's explanation for plaintiff's termination is pretextual.[20]

Plaintiff next argues that she was not assigned new projects upon her return from maternity leave. *See* Opp'n Br. at 31. Far from establishing pretext, plaintiff's deposition testimony in this regard – that she was not assigned new projects – supports defendant's proffered legitimate, nondiscriminatory reason that there was no work for her to perform.  Plaintiff was a limited-term employee assigned to specific tasks.  That plaintiff was not assigned other tasks, outside of those projects, is not evidence of pretext.  Indeed, the undisputed factual record on summary judgment

---

[19] *See, e.g., Warch v. Ohio Cas. Ins., Co.*, 435 F.3d 510, 519 (4th Cir. 2006) (noting that plaintiff failed to establish inference of discrimination where undisputed evidence showed plaintiff was not replaced and plaintiff's duties were apparently spread out among existing employees); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 512 (4th Cir. 1994) ("[T]he fact that the duties of a terminated older employee were assumed by a younger individual is not conclusive of age bias."); *Frieze v. Boatmen's Bank of Belton*, 950 F.2d 538, 540 (8th Cir. 1991) ("Employers often distribute a discharged employee's duties to other members performing related work for legitimate reasons."); *Culwell v. City of Fort Worth*, 503 F. Supp. 2d 813, 817 (N.D. Texas 2007) ("Transfer of work by a terminated employee to other employees does not constitute 'replacement' in an employment discrimination context.").

[20] As the Fourth Circuit has clarified, the burden for establishing a *prima facie* case is "less onerous" than the burden for establishing pretext. *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 251 (4th Cir. 2015).

is that, upon plaintiff's return from maternity leave in 2019, her projects were in the process of winding down. Specifically, (i) the Trades Center project was paused and no work was performed on that project in 2020; (ii) the Facilities Condition Assessments only required quarterly updates to a database; and (iii) plaintiff's technology coordinator position took only 1 to 10 hours a week.[21] Thus, on this undisputed summary judgment record, plaintiff has failed to supply evidence from which a reasonable juror could determine that defendant's proffered legitimate, nondiscriminatory reason was pretextual.

Significant in the pretext analysis, is that the undisputed factual record establishes that the decision to terminate plaintiff was made by Locker and May – not by Congdon – as part of an annual review process of all limited-term employees. *See* Locker Depo. Tr. at 29:1-7; *id.* at 119:18-122:8. Moreover, the undisputed factual record on summary judgment establishes that the County eliminated the positions of two, male limited-term employees who were evaluated as part of the same assessment process that involved plaintiff.[22]   Importantly, since the termination of plaintiff and the other two limited-term employees in 2020, defendant has employed no limited-term employees in plaintiff's former department. *See* Locker Depo. Tr. at 117:15-118:18.

In sum, the undisputed record provides no basis on which a reasonable juror to determine that defendant's proffered legitimate, nondiscriminatory reason for plaintiff's termination is

---

[21] Defendant asserted in paragraphs 23-26 of defendant's undisputed facts that plaintiff's projects were wrapping up upon plaintiff's return from maternity leave. *See* Mem. in Support of SJ at 8-9. Plaintiff did not dispute any of those asserted undisputed facts, but only sought to clarify in paragraph 25 that the Facilities Conditions Assessments project required quarterly updates. *See* Opp'n Br. at 17. Thus, the undisputed record supports defendant's legitimate, nondiscriminatory reason for plaintiff's termination, namely plaintiff's lack of work.

[22] It is not material to the pretext analysis that one employee retired in lieu of being terminated or that the other employee found a new position within the County. Plaintiff does not assert, nor has she come forward with evidence, that there was another position for which she had applied or was qualified and was denied. Indeed, although plaintiff's Complaint suggested that such a position existed, the undisputed summary judgment record, as set forth *supra* on page 11, ¶¶ 52-53 & fn. 14, is that the County never created the contemplated position nor was plaintiff qualified for the contemplated position.

pretextual or that the real reason for plaintiff's termination was pregnancy discrimination. Accordingly, defendant's motion for summary judgment must be granted on plaintiff's pregnancy discrimination claim.

## B. Title VII Retaliation

To state a claim for retaliation under Title VII, plaintiff must establish that she engaged in a protected activity and that because of that protected activity, plaintiff suffered an adverse action. *See Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021). Title VII covers two categories of protected activities, namely participation or opposition. Specifically, an employer may not retaliate against an employee for participating in an ongoing investigation under Title VII, nor may an employer retaliate against an employee for opposing discriminatory practices in the workplace. *See* 42 U.S.C. § 2000e-3(a). Importantly, the Fourth Circuit has explained that retaliation claims under the various anti-discrimination statutes "do not cross-pollinate," meaning that a retaliation claim brought pursuant to a specific anti-discrimination statute must be based on a protected activity under that statute. *Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 153 (4th Cir. 2020). Moreover, to constitute protected activity plaintiff must have complained of discrimination protected by one of the statutes under which she is bringing her claims. *See McNair v. Computer Data Sys. Inc.*, 172 F.3d 863 (4th Cir. Jan. 26, 1999) (Unpublished Table Decision) ("[A] general complaint of unfair treatment does not translate into a charge of discrimination.").

Here, plaintiff identifies two protected activities to support her Title VII retaliation claim: (i) requesting leave related to her infertility treatments and to her pregnancy; and (ii) her December 19, 2018 complaint of discrimination to Human Resources. *See* Opp'n Br. at 26. To begin with, plaintiff's leave requests are not a protected activity under Title VII. Leave requests are not participation in a Title VII investigation, nor do they constitute opposition to a discriminatory

practice. *See Crawford v. Metrop. Gov't of Nashville and Davidson Cty.*, 555 U.S. 271, 276 (2009) (noting that to qualify as a protected activity an employee's complaint must communicate "a belief that the employer has engaged in . . . a form of employment discrimination"). Plaintiff cites no case and makes no argument in her opposition brief regarding how her leave requests might qualify as a protected activity under Title VII. Moreover, plaintiff points to no specific requests for leave that would form the basis of her alleged protected activity.[23] Accordingly, on this record, plaintiff's leave requests do not qualify as protected activities under Title VII.

All parties agree that plaintiff's second asserted protected activity – her December 2018 complaint to HR – clearly qualifies as a protected activity because plaintiff complained of discrimination and harassment. *See* Dkt. 51-10.[24] But to state a *prima facie* case of discrimination, plaintiff must establish that there is evidence from which a reasonable juror could determine that her March 2020 termination was retaliation for plaintiff's December 2018 complaint to HR. *See Roberts*, 998 F.3d at 123 ("[A] plaintiff must show that his employer 'took the adverse employment action *because of* the protected activity'" (emphasis in original)). Plaintiff has failed to do so. To establish causation, plaintiffs frequently rely on temporal proximity. But, given the approximately fourteen-month gap between plaintiff's complaint and her termination, plaintiff cannot establish temporal proximity here. *See Laurent-Workman v. Wormuth*, 54 F.4th 201, 219 (4th Cir. 2022)

---

[23] At times, plaintiff would not even inform Congdon why plaintiff needed to request leave. *See* Blanchard Depo. Tr. at 146:6-9.

[24] In the Complaint, plaintiff alleged that she engaged in protected activities by complaining of discrimination in December 2019 and January 2020. *See* Compl. ¶ 78. Thus, in denying the motion to dismiss with respect to plaintiff's Title VII retaliation claim, the Order properly relied on those dates in determining that plaintiff's retaliation claims survived at the motion to dismiss stage. *See* Order (Dkt. 21). But, at summary judgment, Plaintiff does not allege, or cite to any evidence, that she made any complaints of discrimination in December 2019 or January 2020. *See* Opp'n Br. at 26 (identifying only protected activities occurring in 2018). Thus, the sole protected activity at issue on summary judgment with respect to plaintiff's Title VII retaliation claim is plaintiff's December 2018 Complaint to HR.

(noting that a two-month temporal gap "is sufficiently long so as to weaken significantly the inference of causation between the two events").

Courts have recognized, however, that plaintiffs can establish "ongoing retaliatory animus" even where there is a lack of temporal proximity. *See Hart v. Hanover Cnty. Sch. Bd.*, 2013 WL 1867388, at *5 (E.D. Va. May 2, 2013) (explaining that courts can find an "ongoing retaliatory animus" even where there is a lack of temporal proximity). But plaintiff's arguments in this regard fails; it is unsupported by the summary judgment record and plaintiff fails to establish that an ongoing retaliatory animus existed here. Indeed, plaintiff fails to cite any evidence in support of most of her ongoing retaliatory animus argument. *See* Opp'n Br. at 28 (failing to cite any record evidence).

Importantly, plaintiff fails to draw any connection between her December 2018 protected activity and the alleged retaliatory actions of which she complains.[25] As set forth below, each example of purported retaliation upon which plaintiff relies to reflect ongoing retaliatory animus is unsupported by the record on summary judgment:

- Plaintiff first argues that there was work for her to do and that she should have been assigned projects that were ultimately handled by Congdon. As defendant notes, plaintiff's position was a "limited-term" position created to fulfill a need with respect to specific projects. *See* Locker Depo. Tr. at 11:2-6. Thus, a reasonable juror could not draw the inference that the failure to assign projects

---

[25] The only apparent connection between plaintiff's protected activity and her discharge is that the acts which plaintiff alleges demonstrate an ongoing retaliatory animus took place *after* her December 2018 HR Complaint. But, as discussed above, many of the acts of which plaintiff complains – like her termination – lack temporal proximity that would support an inference of discrimination based purely on timing. With respect to other events, plaintiff fails to provide any information regarding the timeline from which one could infer temporal proximity. Additionally, plaintiff has cited no record evidence that connects any action by Congdon to her HR Complaint and plaintiff cites no record evidence demonstrating that Congdon complained of or remarked upon the HR Complaint. Moreover, plaintiff fails to cite to any record evidence regarding the timing of many of the acts of which she complains, the specifics regarding the projects she claims she should have been given and whether she was qualified for those tasks, or other information that would permit more in-depth assessment of her claims. Furthermore, it appears that some of the matters of which plaintiff complains – the micromanagement and focus on plaintiff's leave – occurred well before plaintiff's HR Complaint and thus cannot create an inference of retaliation. *See Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) (where "gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise").

outside the scope of plaintiff's limited-term work was retaliation for a protected activity. Additionally, the undisputed factual record on summary judgment establishes that all of plaintiff's previous projects were winding down upon her return from maternity leave. *See supra* at p. 8, ¶¶ 35-38 & fn. 9. Indeed, plaintiff testified that she was "under-utilized" and had begun looking for a new job. *See* Blanchard Depo. Tr. at 43:5-16. Moreover, plaintiff has not established that there was enough work for both plaintiff and Congdon to perform and, where plaintiff's position was intended to be limited, no juror could draw the inference that preferring to assign work to a permanent employee rather than to a limited-term employee constituted retaliation.

- Without citation to record evidence, plaintiff also accuses Congdon of excluding plaintiff from meetings. A review of plaintiff's deposition indicates that she testified that she was excluded from meetings and that the reason she was given for her exclusion was that the meetings were for people above her paygrade. *See, e.g.,* Blanchard Depo. Tr. at 210:5-8. But plaintiff does not identify a specific meeting from which she was excluded nor does plaintiff assert that the reason she was given for her exclusion was false. Thus, at summary judgment, these arguments cannot provide support for plaintiff's claims of retaliation.[26]

- Plaintiff also asserts that Congdon assumed plaintiff's duties, without specifying any particular duty that Congdon assumed. *See* Opp'n Br. at 28. Although Congdon assumed some of plaintiff's roles while plaintiff was pregnant, the undisputed factual record establishes that all of plaintiff's duties were returned to plaintiff upon plaintiff's return from maternity leave.[27] Plaintiff's assertion in her deposition testimony that Congdon assumed plaintiff's roles also fails to identify any specific role that Congdon assumed or when. *See* Blanchard Depo. Tr. at 43:12-13. Moreover, there is no information presented by plaintiff in her Opposition Brief regarding how or when plaintiff's unspecified job duties were reassigned. This vague assertion lacks the details necessary to permit a reasonable juror to draw an inference that plaintiff's unspecified job duties were reassigned or that they were reassigned because of plaintiff's complaint to HR.

---

[26] The Fourth Circuit has recognized that claims regarding "exclusion from 'important meetings' lack[] specificity," especially where a plaintiff "fails further to substantiate how the alleged exclusions, whatever they might have been, adversely affected [plaintiff]." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004). Like the plaintiff in *James*, plaintiff here has failed to provide any specifics regarding the meetings from which she was excluded or any adverse impact on plaintiff, such that those vague allegations cannot support a claim of retaliation at summary judgment.

[27] Defendant asserted that all of plaintiff's roles were returned to plaintiff in paragraph 23 of its statement of undisputed facts and plaintiff did not dispute it. A review of plaintiff's Opposition Brief reveals that, other than this assertion on page 28 of the Opposition Brief, the only time plaintiff refers to Congdon assuming or helping plaintiff with her job duties is when plaintiff was pregnant and Congdon took over some of plaintiff's job duties at *plaintiff's request* as part of the accommodations for plaintiff's pregnancy. Thus, the record does not support plaintiff's argument that Congdon assumed plaintiff's duties in retaliation for plaintiff's protected activities.

- Plaintiff asserts, without citing to the record, that Congdon denied plaintiff training. *See* Opp'n Br. at 28.[28] Instead, the factual record establishes that, at least with respect to one training offered, the two courses were highly sought after among defendant's employees and plaintiff was permitted to attend one of the two courses offered for that training. *See* Congdon Depo. Tr. at 129:4-131:22. Thus, the summary judgment record does not support the argument that plaintiff was denied training. Nor does the record support the inference that plaintiff was denied in retaliation for the HR Complaint.

- Plaintiff also once again argues that, in February 2019, Congdon and others had a meeting about terminating plaintiff. *See* Opp'n Br. at 28. Yet, this assertion, as noted previously in *supra* footnote 10, is based on inadmissible hearsay and cannot be a basis for avoiding summary judgment. *See Evans*, 80 F.3d at 962 (summary judgment record evidence cannot be based upon hearsay); *Md. Highways Contractors Ass'n*, 933 F.2d at 1251 (holding that "hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment").

- Plaintiff asserts that her position was budgeted for the remaining fiscal year (July 2020) such that there was no reason to terminate plaintiff in March 2020. But plaintiff concedes that at the time of her termination plaintiff did not have any new projects and, as Locker testified, there are "certain advantages" to resolving personnel issues before the fiscal year ends. *See* Opp'n Br. at 27; Locker Depo. Tr. at 20:17-20. As defendant notes, one such advantage would be to avoid paying the salary of an employee who does not have enough work to keep her busy. *See* Reply at 12. Moreover, plaintiff does not point to any evidence regarding whether terminating plaintiff before the end of the fiscal year was out-of-step with typical practices. Thus, this argument cannot support an inference of retaliation on summary judgment.

- Plaintiff argues that she was the only employee to be terminated and that this status also raises an inference of discrimination. Plaintiff's argument in this regard fails in two respects. First, the only two other limited-term employees in plaintiff's department were also informed that they would be the subject of budget cuts and, to date, no limited-term employees remain in plaintiff's department.[29] Second, plaintiff points to no record evidence regarding those other limited-term

---

[28] Indeed, a review of plaintiff's entire Opposition Brief revealed that the only time "training" appears anywhere in plaintiff's brief is in the argument on page 28 which contains no citations to the record on summary judgment. Similarly, plaintiff briefly mentions, without citation to the record, that Congdon took over as point of contact for contracts that plaintiff managed. But again, the only place "point of contact" appears anywhere in plaintiff's brief is in the argument on page 28 which contains not citation to the record.

[29] Technically, those other employees were not terminated, but only because one employee retired in lieu of being terminated and because the other employee found another position with the County. Plaintiff does not assert that she applied for any other position with the County or that there was any other open, funded position to which she could have applied.

employee's job duties, project statuses, or other information necessary for a determination to be made regarding whether those employees were similarly situated to plaintiff. Accordingly, this argument does not support an inference of retaliation.

- Plaintiff argues that, after her termination, a new listing for a position similar to plaintiff's position became available, but plaintiff does not dispute,[30] and the record on summary judgment demonstrates, the facilities position that was contemplated by the County – but never funded, created, or posted – was not one for which plaintiff was qualified. *See* Blanchard Depo. Tr. at 239-240 (plaintiff acknowledging that she did not have a background in architecture and that the contemplated position was cut from the budget). Thus, this argument cannot support an inference of retaliation on summary judgment.

Because the summary judgment record does not support plaintiff's allegations that her termination was the result of an ongoing retaliatory animus, plaintiff has failed to establish a *prima facie* case of Title VII retaliation. Accordingly, defendant's motion for summary judgment must be granted in this regard.

Even assuming, *arguendo*, that plaintiff has established a *prima facie* case of retaliation under Title VII, defendant has proffered a legitimate, nondiscriminatory reason for plaintiff's termination, namely the lack of work for plaintiff as a limited-term employee. On this summary judgment record, plaintiff cannot establish pretext for the same reasons that plaintiff could not establish pretext on her Title VII pregnancy discrimination claim. Specifically, plaintiff has not pointed to any record evidence connecting her March 2020 termination to her December 2018 complaint made approximately fourteen months prior to that time, nor has plaintiff established that the reason proffered by defendant is false. Indeed, plaintiff conceded at her deposition that the biggest project she worked on was "less than part-time" and that, by the end of 2019, that project

---

[30] Defendant included facts regarding the Facilities Planner/Architect position in paragraph 38 of its undisputed facts. *See* Mem. in Supp. SJ at 12 (Dkt. 35). Plaintiff did not dispute the asserted undisputed facts that the position: (i) was never funded; and (ii) was not one for which plaintiff qualified. *See* Opp'n Br. at 16-18 (paragraph 38 is not included among the paragraphs that plaintiff disputed).

was mostly done. *See* Blanchard Depo. Tr. at 222:3-6; *id.* at 223:10-13. Moreover, as discussed *supra* at page 10, plaintiff was one of three limited-term employees whose positions were eliminated following the December 2019 budget review and, to date, her former department has not employed any limited-term employees. Nor has plaintiff's position been replaced. Accordingly, the summary judgment record does not support plaintiff's claim of retaliation and defendant's motion for summary judgment must be granted in this regard.

## IV.

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Plaintiff asserts two claims under the ADA: (i) disability discrimination; and (ii) retaliation. For the reasons stated below, defendant's motion for summary judgment must be granted with respect to both counts.

### A. Disability Discrimination

The parties agree that in order to establish a *prima facie* case of disability discrimination, plaintiff must demonstrate that: (i) she is a qualified individual with a disability;[31] (ii) she was discharged; (iii) she was meeting defendant's legitimate expectations at the time of her discharge; and (iv) the circumstances of her discharge raise a reasonable inference of unlawful discrimination. *See Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012).

In support of the motion for summary judgment on this count, defendant first argues that plaintiff was not, and is not, a qualified individual with a disability. In her Complaint and in her Opposition Brief, plaintiff identifies her infertility and her pregnancies as her disabilities. To begin

---

[31] A plaintiff may establish a "disability" in three ways: (i) a physical or mental impairment that substantially limits one or more major life activities; (ii) a record of such impairment; or (iii) being regarded as having such an impairment. *See* 42 U.S.C. § 12102(1). Here, the parties focus exclusively on the first prong and analysis here is therefore appropriately limited to whether plaintiff had a physical or mental impairment that substantially limited a major life activity.

with, plaintiff was not pregnant at the time of her discharge. As the Fourth Circuit and other courts of appeals have sensibly held a person must be disabled at the time of the alleged adverse employment action.[32] Even if plaintiff could rely on her prior pregnancies to establish that she was a qualified individual with a disability, on this summary judgment record, plaintiff has failed to rely on evidence demonstrating that her pregnancy qualified as a disability. Although the parties have not cited any no Fourth Circuit case directly on point, other courts have uniformly recognized that pregnancy alone cannot constitute a disability, although pregnancy-related complications may qualify as a disability. *See, e.g., Penaloza v. Target Corp.*, 549 F. App'x 844, 848 n.2 (11th Cir. 2013) ("Pregnancy is generally not considered a disability, although a pregnancy-related impairment may be considered a disability if it substantially limits a major life activity."); *Wenzlaff v. NationsBank*, 940 F.Supp. 889, 890 (D. Md. 1996) ("With near unanimity, federal courts have held that pregnancy is not a 'disability' under the ADA").[33]

Here, the record on summary judgment provides insufficient evidence regarding plaintiff's alleged pregnancy complications. The only record evidence to which plaintiff cites is her own deposition testimony which asserts that she suffered from hypertension, sciatica, hypertension, and herniated discs. *See* Blanchard Depo. Tr. at 21:20-23:5. But there is not enough information about

---

[32] *See Anderson v. Discovery Commc'ns, LLC*, 517 F. App'x 190, 196 (4th Cir. 2013) ("[O]n this record, Anderson simply failed to present evidence creating a genuine issue of material fact as to whether she was 'substantially impaired' in December 2006 as a result of her insomnia."); *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 618 (5th Cir. 2009) ("In an ADA case, the relevant time for assessing the existence of a [cognizable] disability is the time of the adverse employment action."); *Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 316 (6th Cir.2001) (noting that the Sixth Circuit has required plaintiffs to "establish disability at the time of the discriminatory acts to recover under the ADA); *Cash v. Smith*, 231 F.3d 1301, 1306 (11th Cir.2000) (holding that plaintiff not disabled where the plaintiff had not show that "she was substantially limited in any major life activity at the time of the employment actions complained of"); *EEOC v. Stowe–Pharr Mills, Inc.*, 216 F.3d 373, 379 (4th Cir.2000) ("The relevant date for determining whether a plaintiff is a 'qualified individual with a disability' and thus entitled to the ADA's protections is the date of the adverse employment decision complained of.").

[33] Although no Fourth Circuit case appears directly on point, one Fourth Circuit case has cited with approval the *Wenzlaff* case. *See Young v. UPS, Inc.*, 784 F.3d 192, 199 (4th Cir. 2015) (citing *Wenzlaff*, 940 F. Supp. at 890).

the nature, extent, or impact of those conditions on plaintiff to determine, on this record, that those conditions or combination of conditions substantially limited a major life activity.[34]  Plaintiff also argues that she suffered from an "abnormal pregnancy" because, at times, defendant provided certain accommodations to plaintiff.   Opp'n Br. at 24.  That defendant provided some accommodations to plaintiff does not mean that plaintiff qualified, as a matter of law, as a person with a disability or that defendant was obligated to provide such an accommodation.  Nor does plaintiff cite to any authority that would require such a result.[35]  Accordingly, on this summary judgement record, plaintiff has failed to establish that she was a qualified individual with a disability based on her pregnancy.

Plaintiff next asserts that her infertility diagnosis renders her a qualified individual with a disability. The parties have not identified any Fourth Circuit  decision holding that infertility qualifies as a disability under the ADA.  District courts are divided on this point.  *Comp. Erikson v. Bd. Of Governors*, 1997 WL 548030 (N.D. Ill. Sept. 2, 1997) (holding that infertility is a

---

[34] Plaintiff did submit two doctor's notes with her requests for accommodations, those notes are also insufficient to establish at summary judgment that plaintiff had a disability at any point during her pregnancy.  The doctor's notes assert that plaintiff could not walk or stand for long periods of time and requested that plaintiff perform only sedentary work. *See* Dkt. 42-13.  But those notes do not provide any information about plaintiff's condition, the severity of the condition, the expected duration of those conditions, or any other information pertinent to whether plaintiff's conditions qualify as a disability. Without such information, plaintiff has failed to establish that she has a disability, as courts have held that similar restrictions on walking or standing do not demonstrate that plaintiff is a qualified individual with a disability. *See, e.g., Wood v. Crown Redi–Mix, Inc.*, 339 F.3d 682, 686 (8th Cir.2003) (finding that the evidence did not show a plaintiff's ability to walk was substantially limited where, among other things, he could only walk approximately one-quarter of one mile before having to stop to rest); *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1025 (5th Cir.1999) (holding that a plaintiff who limped in part because one of her legs was shorter than the other was not substantially limited in the major life activity of walking because "moderate difficulty experienced while walking does not rise to the level of a disability").

[35] That defendant provided an accommodation to plaintiff would have relevance if plaintiff was arguing that she was "regarded as" having a disability.  Instead, plaintiff has asserted that she was "actually disabled" and, under that prong, whether defendant provided an accommodation appears irrelevant.  Moreover, even if plaintiff proceeded under the "regarded as" prong, plaintiff's argument would still be deficient because she has not provided any evidence that she was regarded as having a disability at the time of her termination in March 2020 when she had not been pregnant for more than fourteen months.

disability) *with LaCoparra v. Pergament Home Ctrs., Inc.*, 982 F. Supp. 213 (S.D.N.Y. 1997).[36] It is unnecessary to resolve that issue here, however, because the record on summary judgment does not demonstrate that plaintiff in fact has an infertility diagnosis. Indeed, the words "infertile" and "infertility" do not appear in any of the fifteen pages of asserted alternative facts included in plaintiff's Opposition Brief. Nor do those words appear in plaintiff's deposition testimony. Thus, there is no evidence on this summary judgment record that plaintiff was ever diagnosed as infertile.[37] Accordingly, even assuming that infertility qualifies as a disability under the ADA, plaintiff has not established that she suffered from that condition and thus cannot establish on this record that she was a qualified individual with a disability.

In sum, plaintiff cannot establish at summary judgment that she was a qualified individual with a disability at the time of her discharge. Plaintiff was not pregnant at the time she was discharged and, on this record, has no diagnosis of infertility, assuming such condition qualified as a disability.

Even assuming *arguendo* that plaintiff could establish that she was disabled and could make a *prima facie* case of disability discrimination, defendant has proffered a legitimate, nondiscriminatory and plaintiff cannot establish pretext for the same reasons that she cannot

---

[36] Many other district courts faced with this issue have declined to decide whether infertility qualifies as a disability. *See, e.g. Koerts v. MCI Telecommc'ns Corp.*, 1997 WL 30987 (N.D. Ill. Jan. 22, 1997) ("Here, while the parties vigorously debate whether Koerts' infertility qualifies as a disability under the ADA, the Court need not, and does not, resolve that issue. . . .").

[37] Plaintiff's deposition testimony makes passing reference to "low reserve," which presumably low ovarian reserve or early menopause, and discusses her history of miscarriages as well as her age. *See* Blanchard Depo. Tr. at 20:13-22. It is not clear on this record whether those conditions would qualify defendant as infertile. But, even among courts that have indicated a willingness to treat infertility as a disability, plaintiff's condition would likely not qualify because her difficulties appear associated with the natural aging process. *See Saks v. Franklin Covey Co.*, 117 F.Supp.2d 318 (S.D.N.Y. 2000) ("This Court harbors no doubt that infertility that results from the natural aging process, rather than from some disease or defect, is not a 'disability' within the meaning of the ADA"); *see also Klein v. Florida Dept. Of Children and Families Serv.*, 34 F.Supp.2d 1367, 1372 (S.D.Fla.1998) (holding that "[m]enopause, generally, is not a handicap or disability"); *McGraw v. Sears, Roebuck & Co.*, 21 F.Supp.2d 1017, 1021 D.Minn.1998) (holding that menopause is not a disability).

establish pretext with respect to her Title VII discrimination claim. *See supra* at pages 14-16. Accordingly, summary judgment must be granted in favor of defendant with respect to plaintiff's disability discrimination claim.

### B. ADA Retaliation

Plaintiff has also alleged that defendant retaliated against her in violation of the ADA. An ADA retaliation claim follows the familiar *McDonnell-Douglas* framework. To state a *prima facie* case of retaliation a plaintiff must show that: (i) she has engaged in a protected activity; (ii) she suffered an adverse action after engaging in the protected conduct; and (iii) there was a causal link between the protected conduct and the adverse action. *See Laird v. Fairfax Cnty.*, 978 F.3d 887, 892 n. 4 (4th Cir. 2020). Plaintiff does not need to show that she was actually disabled in order to state a retaliation claim. *See Rhoads v. FDIC*, 257 F.3d 373, 391 (4th Cir. 2001). Although plaintiff can establish that she engaged in protected activities when she requested accommodations in 2018 and when she made a complaint to HR in December 2018, plaintiff has not demonstrated, on this summary judgment record, any causal link between that protected conduct and her termination more than one year later.

As with plaintiff's Title VII retaliation claim, there is no temporal proximity between plaintiff's protected activities in December 2018 and her termination in March 2020. As previously noted, the Fourth Circuit has found that a "three- or four-month lapse" between protected activities and adverse actions is insufficient to establish causation. *Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006). Here, the gap between all of plaintiff's alleged protected leave activities and her termination is more than a year. Accordingly, plaintiff cannot rely on temporal proximity to establish a causal connection.

Plaintiff also attempts to demonstrate a causal connection between her ADA protected

activities and her discharge relying on the same ongoing retaliation animus arguments that she made in support of her Title VII retaliation claim. For the reasons stated *supra* at pages 17-22, those arguments also fail with respect to plaintiff's ADA retaliation claim. Plaintiff also argues in support of her ADA retaliation claim that Congdon allegedly began retaliating against plaintiff by issuing an unfavorable mid-year review in January 2019 and full-year review in June 2019. This argument is unsupported by the record. To begin with, plaintiff received an over overall "meets expectations" score in her June 2019 review, which was consistent with prior reviews before she requested the accommodations for her pregnancy or filed her HR complaint. Opp'n Br. at 9-10 (noting that plaintiff received a 3.3 score in 2017, plaintiff received a 3.8 score in 2018, and plaintiff received a 3.4 score in 2019); Def. Exh. 10 at 3 (Dkt. 35-10). Accordingly, plaintiff's June 2019 review was not materially different from prior reviews issued *before* plaintiff's December 2018 HR Complaint and cannot support an inference of retaliation. *See Britt v. DeJoy*, 2022 WL 4280495 (4th Cir. 2022) (noting that, where gradual adverse job actions began well before the plaintiff ever engaged in any protected activity, an inference of retaliation does not arise). Importantly, plaintiff does not allege that she suffered a change in job title, duties, or pay as a result of either performance review and neither the mid-year nor the June 2019 review was the alleged basis for plaintiff's termination. *See* Locker Depo. Tr. at 30:4-8; Def. Exh. 11. Although plaintiff does allege that Congdon stated that Congdon gave the 2019 mid-year review because of plaintiff's HR complaint, plaintiff fails to draw any connection between that remark or that mid-year review and plaintiff's termination.[38] As the Fourth Circuit has noted, "in the absence

---

[38] As plaintiff concedes in her Opposition Brief, plaintiff cannot rely on the mid-year or June 2019 reviews to form the basis of her retaliation claim because they are beyond the 300-day lookback period. *See* Opp'n Br. at 4 n. 2; *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435 (4th Cir. 2019). Accordingly, the reviews are only relevant to the extent they informed the decision to discharge plaintiff (which they did not) or to the extent they can support a claim of ongoing retaliatory animus (which they do not). Thus, the reviews do not create an inference of retaliation with respect to plaintiff's termination.

of a clear nexus with the employment decision in question, the materiality of stray or isolated remarks is substantially reduced." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 300 (4th Cir. 2010). Thus, pursuant to *Merritt*, Congdon's remark in January 2019 regarding plaintiff's mid-year review – which had no impact on plaintiff's job, duties, or pay – lacks materiality with respect to the 2020 decision by May and Locker to terminate plaintiff. Accordingly, on this record, plaintiff has not established a *prima facie* case of ADA retaliation and defendant's motion must be granted in this regard.

Even assuming *arguendo* that plaintiff could state a *prima facie* case of ADA retaliation, defendant has come forward with a legitimate non-discriminatory reason for plaintiff's discharge – namely, the lack of work for plaintiff to perform. And plaintiff has failed to demonstrate, on this summary judgment record, that defendant's proffered reason is pretextual, because plaintiff has conceded that she did not have enough work and because defendant eliminated all limited-term employees with plaintiff's department. *See Ullrich v. CEXEC, Inc.*, 709 F. App'x 750, 754 (4th Cir. 2017) (holding that plaintiff had failed to show pretext because the adverse action was "tied to performance and the need to reduce overhead and occurred over five months after Ullrich's EEOC Charge"); *see supra* at p.14-16. Thus, plaintiff has failed to produce evidence at summary judgment from which a reasonable juror could conclude that plaintiff's ADA protected activities were the cause of her discharge more than one year later. Accordingly, defendant's motion for summary judgment must be granted in this regard.

**V.**

Plaintiff's final claim is for FMLA retaliation based on her FMLA leave from January 31, 2019 to April 23, 2019. As the Fourth Circuit has noted, the "FMLA provides proscriptive rights 'that protect employees from discrimination or retaliation for exercising their substantive rights

29

under the FMLA." *Vannoy v. Fed. Res. Bank of Richmond*, 827 F.3d 296, 304 (4th Cir. 2016). Plaintiff's FMLA retaliation claims, like plaintiff's Title VII and ADA retaliation claims, rests on the circumstantial evidence evaluated under the *McDonnell-Douglas* burden-shifting framework. *See id.*

In her Opposition Brief, plaintiff devotes relatively little space to her FMLA claim and cites no apposite case law or evidence from the summary judgment record in support of her arguments. *See* Opp'n Br. at 32-33. Plaintiff argues that there existed a "plan set up by County management to terminate[] [plaintiff's] employment," but this argument is pure speculation and unsupported by the summary judgment record. Opp'n Br. at 32. To the extent plaintiff relies on the supposed existence of a February 2019 meeting, plaintiff has pointed to no admissible evidence that any February 2019 meeting concerned plaintiff's employment.[39] Moreover, even though plaintiff's FMLA leave is closer in time to her discharge than any other protected activity she has alleged, there is still a lapse of over 300 days between plaintiff's FMLA protected activities and plaintiff's 2020 termination, which is insufficient to create an inference of retaliation. *See, e.g., Huan Zhou v. Lowe's Home Ctrs., LLC*, 2021 WL 26666595, at *8 (E.D.Va. June 29, 2021) (recognizing that a time lapse of four months was too great to create an inference of retaliation); *cf. Pascual*, 193 F. App'x at 233 (finding that three-to-four month lapse was too great to create an inference of ADA retaliation); *Laurent-Workman*, 54 F.4th at 219 (noting that a two-month temporal gap weakens the inference of Title VII retaliation). Plaintiff also accuses Congdon of "increased hostility" upon plaintiff's return from FMLA leave. Opp'n Br. at 32. But even among

---

[39] As discussed *supra* in footnote 10, plaintiff relies on her deposition testimony in which she recounts what another employee, Abed, told plaintiff about the meeting, which neither plaintiff nor Abed attended. *See* Blanchard Depo. Tr. at 53-54. These hearsay statements are inadmissible at summary judgment and plaintiff's reliance on the speculation and conjecture of herself and Abed cannot create a genuine issue of material fact on this point. *See Evans*, 80 F.3d at 962 (summary judgment record evidence cannot be based upon hearsay).

plaintiff's asserted additional facts, plaintiff has cited no record evidence of any increased hostility *after* her FMLA leave. *See Francis*, 452 F.3d at 309 (where "gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise"). Indeed, plaintiff cites no record evidence at all with respect to her FMLA retaliation claim. *See* Opp'n Br. at 31-32 (citing no record evidence).[40] Accordingly, on this summary judgment record, no reasonable juror could reasonably infer that plaintiff was discharged in retaliation for her FMLA leave.

Even assuming *arguendo* that plaintiff could establish a *prima facie* case of FMLA retaliation, plaintiff has failed to establish pretext on this summary judgment record. As discussed in greater detail *supra* at pages 14-16, defendant has proffered evidence that plaintiff was discharged for lack of work – a legitimate, nondiscriminatory reason. On this record, plaintiff has not come forward with evidence from which a reasonable juror could determine that defendant's proffered reason is pretext and that the real reason is retaliation for plaintiff's FMLA leave. *See Dockins v. Benchmark Commc'ns*, 176 F.3d 745, 749 (4th Cir. 1999) ("[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate non-discriminatory reasons for a discharge."). Indeed, any inference of causation is undermined by the fact that plaintiff had previously taken FMLA leave for her prior pregnancy and not been discharged. Importantly, although Congdon was consulted regarding plaintiff's workload, the decision to discharge plaintiff was made by Locker and May and plaintiff has not

---

[40] Plaintiff's June 2019 review, conducted after plaintiff returned from FMLA leave, did mention that plaintiff's leave, telework, and attendance were negatively impacting plaintiff's work. *See* Def. Exh. 10. But it is clear from the evaluation that Congdon was referencing "unscheduled absences," and the evaluation also indicates that Congdon had seen improvements since plaintiff returned from her FMLA leave. *See id.* at 9. Moreover, this evaluation does not create an inference of retaliation with respect to plaintiff's discharge because plaintiff has cited no evidence that defendant relied on the June 2019 evaluation in making the determination to discharge plaintiff. Indeed, the record evidence is that the review played no role in the decision to discharge plaintiff. *See* Locker Depo. Tr. at 30:4-8; Def. Exh. 11.

demonstrated any retaliatory animus with respect to those decisionmakers regarding her 2019 FMLA leave. *See Vannoy*, 827 F.3d at 305 ("It is not our role to second-guess FRBR's legitimate, nondiscriminatory bases for terminating Vannoy where there is nothing in the record before us evincing retaliatory animus."). Thus, on this summary judgment record, plaintiff has failed to establish pretext or to point to any evidence from which a reasonable juror could determine that defendant terminated plaintiff in retaliation for her FMLA leave more than ten months before. Accordingly, defendant's motion for summary judgment must be granted in this regard.

## VI.

In sum, on this summary judgment record, plaintiff has failed to cite to any record evidence demonstrating that her March 2020 discharge was motivated by pregnancy or disability discrimination or in retaliation for protected activities under Title VII, the ADA, or the FMLA. Plaintiff has not established that she was a qualified individual with a disability and each of her alleged protected activities was too remote in time from her discharge to create any inference of retaliation. In any event, defendant has proffered a legitimate, nondiscriminatory reason for plaintiff 's discharge – lack of work – and plaintiff has failed to cite to any record evidence that would support her claims that defendant's reason is pretextual. In fact, the record on summary judgment clearly demonstrates that the projects plaintiff was assigned as a limited-term employee were ending and that all limited-term employee positions within her department were also eliminated in 2020. Accordingly, defendant's motion for summary judgment must be granted with respect to each of the remaining counts: (i) Count I – pregnancy discrimination; (ii) Count III – retaliation pursuant to Title VII; (iii) Count IV – disability discrimination; (iv) Count VI – retaliation pursuant to the ADA; and (v) FMLA retaliation.

An appropriate order will enter.

The Clerk of Court is directed to provide a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
February 24, 2023

T. S. Ellis, III
United States District Judge